## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KHADIJAH EL-AMIN<br>1173 Tree Top Drive<br>Tobyhanna, PA 18466<br><br>　　　　Plaintiff,<br><br>　v.<br><br>MEDEXPRESS URGENT CARE, P.C. -<br>PENNSYLVANIA, d/b/a MEDEXPRESS<br>1001 Consol Energy Drive<br>Canonsburg, PA 15317<br>　　　and<br>UNITED HEALTHCARE GROUP, INC.<br>9800 Healthcare Lane<br>Minnetonka, MN, 55436<br><br>　　　　Defendants. | CIVIL ACTION<br><br>No.:<br><br><br>**JURY TRIAL DEMANDED** |

### CIVIL ACTION COMPLAINT

Plaintiff, Khadijah El-Amin (hereinafter referred to as "Plaintiff"), by and through her undersigned counsel, hereby avers as follows:

### I. Introduction

1.　　Plaintiff has initiated this action to redress violations by Defendants of Title VII of the Civil Rights Act of 1964 ("Title VII" - 42 U.S.C. §§ 2000e, *et. seq.*), 42 U.S.C. § 1981, and the Pennsylvania Human Relations Act ("PHRA - 43 Pa. C.S. §§ 951 *et. seq.*). Plaintiff asserts herein that she was unlawfully subjected to a hostile work environment, disciplined, and reduced in work hours within Defendants in violation of these laws and seeks damages as set forth more fully herein.

## II. Jurisdiction and Venue

2. This Court may properly maintain personal jurisdiction over Defendants because Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendants to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. State of Washington, 326 U.S. 310 (1945) and its progeny.

3. This action is initiated pursuant to a federal law. The United States District Court for the Middle District of Pennsylvania has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state-law claims because they arise out of the same common nucleus of operative facts as his federal claims herein.

4. Venue is properly laid in this District pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2), because Defendants reside in and/or conduct business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## III. Parties

5. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

6. Plaintiff is an adult who resides at the above-captioned address.

7. MedExpress (hereinafter "Defendant MX") operates more than 150 locations nationwide proving medical services with the primary objective of taking walk-in patients without appointments.

8. United Healthcare Group, Inc. (hereinafter "Defendant UHG") acquired Defendant MX and operates Defendant MX through a division of its organization, referred to as Optum. Defendant UHG, by and through its division Optum, operates, creates, establishes, and oversees operations within Defendant MX.

9. Defendants have overlapping resources, policy directives, management, and coordination such that they are properly construed as Plaintiff's single, joint and/or integrated employer for the purposes of this lawsuit. Defendant UHG, through its division Optum, treat Defendant MX like branch locations they control.

10. At all times relevant herein, Defendants acted by and through their agents, servants, and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for the benefit of Defendants.

## IV. **Factual Background**

11. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

12. Plaintiff is an African-American female, and she is Muslim.

13. Plaintiff was hired by Defendants in or about June of 2017, and she remains employed with Defendants through the present.

14. At all times relevant to Plaintiff's employment with Defendants, she has worked for Defendants as 677 Kidder Street, Wilkes-Barre, PA 18702 (County of Luzerne)

15. The sole position in which Plaintiff has worked for Defendants is that of Medical Assistant.

16. Through the second half of 2018, Plaintiff was required to work with a Caucasian nurse, one Tina Balsavage ("Balsavage"). Balsavage was a long-term employee of Defendants employed as a Registered Nurse ("RN").

17. Balsavage was openly discriminatory, and on consistent and pervasive basis, made comments (or actions) such as:

- She doesn't like black people;

- "You need to" or asking "if I read," implying black people have literacy problems;

- Not wanting "your kind" in reference to black people;

- Derogatory statements about Muslims wearing religious clothing in the facilities;

- Refusing to treat an Arab patient;

- Racial references to wearing hoodies;

- Telling an Arab male to go back to his country;

- Refusing to call an interpret line for an only-Spanish speaking patient with no cellular phone of her own because she didn't want the patient near her speaker phone; and

- Many other comments, gestures and statements that were outright racist, religiously discriminatory, and offensive.

18. Balsavage made discriminatory remarks or gestures on many shifts Plaintiff overlapped working with her. And she was consistently mean, derogatory, and offensive through actions to Plaintiff in addition to offensive commentary. The foregoing conduct created a *very* hostile work environment.

19. Plaintiff could no longer tolerate discriminatory abuse by Balsavage, so Plaintiff complained of racial and religious discrimination to Melissa Chisdock ("Chisdock"), a long-term

4

supervisor of Defendants and "Center Manager." Chisdock oversaw operations of the Center in which Plaintiff was employed.

20. Plaintiff's first complaint of discrimination as aforesaid was made on or about August 24, 2018. Chisdock had referenced Balsavage as her friend and expressed distaste for Plaintiff' making complaints.

21. Chisdock took no remedial action following Plaintiff's first complaint, and Plaintiff again met with Chisdock on or about September 4, 2018. Plaintiff reiterated concerns of religious and racial discrimination to Chisdock. Chisdock's idea of addressing Plaintiff following her second complaint was tell Plaintiff at the conclusion of the meeting, Balsavage is not going to be happy about your accusations.

22. Chisdock clearly exhibited favoritism towards Balsavage, as Balsavage would sit at times performing minimal or no work, handling personal matters, preparing wedding invitations for her daughter, and Chisdock would tell staff including Plaintiff just let her be as she "has a lot going on right now." This would be while Plaintiff was literally running around to handle patients due to high volume.

23. Because Chisdock permitted a hostile work environment to continue, for at least the timeframe of August 24, 2018 through September 19, 2018 - - Plaintiff was left with no choice but to further escalate her complaints. Chisdock completely ignored her employment, policy-based, and legal obligations permitting Plaintiff to endure a hostile work environment for at least another month based upon her inaction (pre-ethics complaint by Plaintiff).

24. On or about September 19, 2018, Plaintiff contacted Defendants' Ethics HelpCenter to report concerns that Balsavage has been racially and religiously discriminatory, and had created a "hostile work environment."

25. *After months of experiencing a hostile work environment*, Plaintiff was finally told that she would be scheduled for different shifts than Balsavage. Upon information and belief, Balsavage was not the recipient of any mandatory training or meaningful discipline (despite alleged zero-tolerance for discrimination).

26. Plaintiff's complaints of discrimination about and concerning Balsavage were not limited to August and September, she reiterated concerns through late 2018. For example (and only by way of example), she complained to Richard Lemm (from Human Resources) about further discriminatory remarks / actions by Balsavage even in November 2018 about a Hispanic patients.

27. By late 2018, Plaintiff's hours were being reduced. Prior to her complaints of racial and religious discrimination, Plaintiff was given flexibility, made her own schedule, and was given hours requested. Following her complaints of discrimination, she was experiencing clear schedule manipulation, decreases in hours to force her to quit, refusal to coordinate her schedule, and disparate admonishment about her work performance.

28. Since late 2018 and through the present, Plaintiff's hours have gradually been denied, reduced, and she has been threatened with scheduling. Moreover, Defendants have hired additional employees and reassigned Plaintiff's hours and/or shifts (to new or existing employees).

29. Plaintiff seeks relief in this lawsuit because: (1) she was subjected to a hostile work environment; (2) she lost income from unilateral shift, work and schedule reductions; and (3) for unfair admonishment and/or discipline for petty or pretextual issues following her complaints of discrimination to dissuade her from further complaining.

## First Cause of Action
## Violations of Title VII of the Civil Rights Act of 1964 ("Title VII")
### (Religious / Racial Discrimination & Retaliation)

30. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

31. The actions taken as outlined in this Complaint constitute: (1) unlawful discrimination; (2) a hostile work environment; and (3) retaliation. These actions taken because of Plaintiff's race, religion and/or complaints of discrimination constitute violations of Title VII of the Civil Rights Act of 1964 ("Title VI").

32. Plaintiff properly exhausted her administrative remedies by timely filing a Charge with the Equal Employment Opportunity Commission ("EEOC") asserting these claims and by filing the instant lawsuit within 90 days of receiving a notice of case closure and/or a right-to-sue letter.

## Second Cause of Action
## Violations of 42 U.S.C. § 1981
### (Racial Discrimination & Retaliation)

33. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

34. The actions taken as outlined in this Complaint constitute: (1) unlawful discrimination; (2) a hostile work environment; and (3) retaliation. These actions taken because of Plaintiff's race, religion and/or complaints of discrimination constitute violations of 42 U.S.C. § 1981.

### Third Cause of Action
### Violations of the Pennsylvania Human Relations Act ("PHRA")
### (Religious / Racial Discrimination & Retaliation)

35. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

36. Plaintiff repeats and re-alleges all allegations as set forth in Count I of this Complaint as they constitute identical violations of the PHRA.

**WHEREFORE,** Plaintiff prays that this Court enter an order providing that:

A. Defendants are to be prohibited from continuing to maintain their illegal policy, practice, or custom of retaliating against employees and are to be ordered to promulgate an effective policy against such discrimination/retaliation and to adhere thereto;

B. Defendants are to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendants' illegal actions, including but not limited to back pay, front pay, bonuses and medical and other benefits. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered discrimination/retaliation at the hands of Defendants until the date of verdict;

C. Plaintiff is to be awarded punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct, and to deter Defendants from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to emotional distress/pain and suffering damages - where permitted under applicable law(s)).

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law;

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

_____
Ari R. Karpf, Esquire
3331 Street Road
Building 2, Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: September 12, 2019